880 F.2d 1321
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gloria MILLS, Plaintiff-Appellant,
v.
SECRETARY HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-4085.
 United States Court of Appeals, Sixth Circuit.
 July 26, 1989.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff appeals from the district court's judgment affirming the Secretary's denial of social security disability insurance benefits. Because we conclude that the Secretary's decision is supported by substantial evidence, we affirm the district court's judgment.
 
 I.
 
 2
 The plaintiff-appellant, Gloria Mills, is a fifty-one year old woman with a high school education. Her past relevant work was as a nurse's aide (September 1975 to March 1982) and as a merchandise packager (June 1971 to March 1982). In February 1986, Mills filed her application for social security disability insurance benefits with the Social Security Administration ("SSA"). In her application, Mills alleged that she became disabled in March 1982 due to an arm injury and weakness in her right leg. Mills's application was denied by the SSA upon initial consideration and upon reconsideration. She then requested a hearing before an administrative law judge ("ALJ").
 
 
 3
 The administrative hearing was held on December 12, 1986. At this hearing, Mills testified that she suffered her arm injury when she fell through a window during an epileptic seizure which occurred in July 1985.[1] Because of this injury, Mills stated that she is severely limited in the use of her right arm. In particular, she stated that she often needs help putting her clothes on; that she often cannot wash her entire body (because she has trouble reaching some parts of her body); and that she has limited dexterity in her right hand. J.App. at 60-61. In addition, Mills testified that she suffers from low back pain (due to ruptured discs) and weakness in her right leg. Mills stated that her right leg sometimes "gives out," and that she wears a leg brace for support. Moreover, she stated that there are days when she cannot walk at all, and that on those days she uses a wheelchair. Mills testified that she performs little or no housework, that she drives her car only "[o]nce in a blue moon," and that she does not shop for groceries. Id. at 58-59. She further testified that she spends most of her time watching television, and that her friends and/or family members check on her daily to see if she needs anything.
 
 
 4
 On March 27, 1987, the ALJ rendered his decision denying Mills's application for disability insurance benefits. Based upon the medical evidence in the record, the ALJ found that Mills suffered from degenerative joint disease, degenerative disc disease, a "soft tissue" right arm injury, controlled epilepsy, and a personality disorder with somatic features. However, while finding this combination of impairments to be severe, the ALJ determined that Mills did not suffer from a listed impairment or the equivalent of a listed impairment. In addition, while finding that Mills could not return to her past relevant work as a nurse's aide, the ALJ determined that she possessed the residual functional capacity to perform a full range of light and sedentary work. The ALJ based this latter determination upon his conclusion that Mills's self-described limitations were more volitional than "organic." Id. at 17-18. Accordingly, using the vocational grids as a guide, see 20 C.F.R. Pt. 404, Subpt P, App. 2 (1988), the ALJ found that Mills was not disabled. The ALJ's ruling subsequently became the final decision of the Secretary.
 
 
 5
 On September 10, 1987, Mills filed suit in federal district court seeking judicial review of the Secretary's decision. Thereafter, the parties filed cross-motions for summary judgment, and consented to have the case decided by a United States magistrate. On September 23, 1988, the magistrate rendered his decision affirming the Secretary's denial of benefits. This timely appeal followed.
 
 II.
 A.
 
 6
 Our review of the administrative decision in this case is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the correct legal standards were applied. See Richardson v. Perales, 402 U.S. 398, 401 (1971); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir.1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson, supra. In reviewing the Secretary's decision, we may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 B.
 
 7
 In challenging the Secretary's decision in this case, Mills relies principally upon the medical reports of her treating physician, Dr. Glenn D. Blankenhorn. Between 1985 and 1986, Dr. Blankenhorn performed various clinical tests on Mills and diagnosed her as suffering from degenerative joint disease, degenerative disc disease, neuroforaminal stenosis, lumbar radiculopathy, laceration to the neurovascular bundle right brachium, anxiety and depression, and possible neurosis. Id. at 173. In a letter to Mills's attorney dated October 10, 1986, Dr. Blankenhorn stated:
 
 
 8
 The laceration to her arm is, in my opinion, disabling. You will note on the occupational therapy testing that there are consistent weaknesses and she is noted to have severe sensory involvement and marked decreases in strength. The strength involvement is severe enough that it would limit her in most activities of daily living, requiring bimanual dexterity or use of the right upper extremity. The laceration also seems to have resulted in loss of motion about the shoulder girdle.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 I think the entire picture is clouded by some voluntary inconsistency in testing Mrs. Mills. This was noted by the neurologist, by the neurosurgeon, and by myself. We did have psychometric evaluation done of this and there were no severe psychiatric abnormalities noted. Very frequently patients do like to impress their physicians with the amount of problems they are having. I personally don't feel that it is for secondary gain but that is a possibility. It is in general, however, my opinion that while not one of her problems is totally disabling, I think the disabling conditions when combined do leave her with a significant permanent partial disability. In fact, I think because of her age and education level, the possibility of starting her in even sedentary employment would be very difficult, if not impossible, at this time.
 
 
 12
 Id. at 221-22 (Emphasis added).
 
 
 13
 Concerned about the possibility that Mills might be overstating the disabling effects of her impairments, the ALJ ordered her to undergo a psychological evaluation. On December 31, 1986, a psychological evaluation was conducted by Dr. Ruth M. Haude, who subsequently reported that:
 
 
 14
 The writer cannot rule out lots of voluntary under-performance for Mrs. Mills' level of ability. The data are also consistent with heavy somatization tendencies.... This person appears well able to understand, remember and carry out simple several-step instructions, although she may be strongly inclined not to carry out instructions or accept demands for performance. Mrs. Mills' interactions with supervisors, co-workers and the public could be negatively influenced by possible hostility, passive-aggressiveness, histrionic tendencies, and extremely high emphasis on physical symptoms....
 
 
 15
 Id. at 23-24 (Emphasis added).
 
 
 16
 Relying heavily upon Dr. Haude's findings, the ALJ concluded that Mills's activities were restricted more by her own volition than by actual physical impairments. Therefore, discounting the results of certain clinical tests performed by Mills's physicians and also discounting Mills's testimony at the administrative hearing, the ALJ found that she possessed the residual functional capacity to perform a full range of light and sedentary work.
 
 
 17
 The ALJ's findings are adequately supported by Dr. Blankenhorn's observations and by Dr. Haude's medical report. Given this evidence and the fact that credibility determinations are the exclusive domain of the Secretary, see Garner v. Heckler, supra, we conclude that the Secretary's decision to deny benefits is supported by substantial evidence. Accordingly, finding no error in the magistrate's opinion, we AFFIRM the district court's judgment.
 
 
 
 [1]
 While Mills continues to suffer from epilepsy, it is undisputed that her condition is currently well-controlled through the use of medication